STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:          David_Rizk@fd.org

Counsel for Defendant TERUEL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS TERUEL,<br><br>Defendant. | **Case No.:** CR 19–00580 VC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**<br><br>**Court:**  Telephonic/Video<br>**Hearing Date:**  April 13, 2019<br>**Hearing Time:**  2:00 p.m. |

### I.   INTRODUCTION

Luis Teruel will be before the Court on April 13, 2020 to be sentenced for selling an undercover officer $20 worth of cocaine.  He was arrested in October 2019 and given a state court date—which he dutifully attended, only to be arrested by the federal government and then detained.  Mr. Teruel has never been arrested, convicted, or deported.  He fled Honduras to find better economic opportunity in the United States.  Mr. Teruel has now been incarcerated at Santa Rita Jail for over four months, since December 9, 2019.  His Guidelines are 6-12 months; they would have been 0-6 months had he chosen to satisfy the safety valve requirements, but as a lowly street seller he had no valuable information to share and understandably was terrified he would be targeted if he

spoke to the government (which he did not).  At the time of his arrest, he had only been living in the Bay Area for roughly six months and was working as a roofer and construction worker.  When his legitimate work dried up and he could not pay his rent, he foolishly tried to make ends meet by selling drugs—and was arrested immediately.  The time he has already served has adequately deterred Mr. Teruel from reoffending and he understands that he must not attempt to return to the United States.  He respectfully asks that he be sentenced to time served and three years of supervised release.

## II.     SENTENCING GUIDELINES

Mr. Teruel stipulates to the Guidelines calculation set forth in the parties' plea agreement, which is as follows:

| | |
|---|---:|
| Base Offense Level, U.S.S.G. § 2D1.1(c)(14): | 12 |
| Acceptance of responsibility, U.S.S.G. § 3E1.1: | -2 |
| **Total Offense Level** | **10** |

Mr. Teruel has no prior convictions and thus falls into Criminal History Category I.  The Guidelines sentence for a Total Offense Level of 10 and Criminal History Category I is 6-12 months.

## III.    FACTUAL BACKGROUND[1]

Mr. Teruel was born on January 6, 1989 in the department of Santa Bárbara, Honduras, to Maria del Carmen and Domingo Manuel Vega.  He grew up very impoverished in Santa Bárbara with six siblings (two sisters and four brothers), and remains close to all of his family and had at least weekly contact with them prior to his arrest.  The area is dominated by agriculture and Mr. Teruel's family worked on borrowed land belonging to other people.  His extended family shared a home without electricity.  His family recently reported to counsel that conditions in Honduras are extremely poor and challenging.  In particular, Mr. Teruel's mother has high blood pressure and diabetes but the family has never had the money to pay for doctor visits.  As a result of their poverty, Mr. Teruel finished sixth grade in Honduras and then began working to help support his family.  There is a lot of

---

[1] Mr. Teruel consented to a criminal-history only Presentence Report and provides this very brief social history to assist the Court in sentencing.  Counsel intended to provide a more extensive account to the Court but counsel's access to Mr. Teruel has been severely limited by the Coronavirus pandemic and, under the circumstances, the defense did not wish to postpone sentencing further.

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*TERUEL*, CR 19–00580 VC

2

crime in Santa Bárbara, led by street gangs.  His family reports that the gangs relentlessly take advantage and target hard-working, poor families.  Mr. Teruel was himself frequently harassed, threatened, and even attacked.  At about age 20, he was severely beat and threatened by a local gang.  One of Mr. Teruel's cousins was also killed by a gang.

Approximately 10 months ago, Mr. Teruel came to the United States looking for work.  He had no relatives in the U.S. when he arrived and had never been married.  However, Mr. Teruel left behind two children in Honduras (ages 4 and 10 years old) with their mothers.  A third child of his was also born in Honduras but now lives in Maryland.  When Mr. Teruel arrived in the United States he moved to Hayward, where he lived with a partner, Onelia Lopez.  They dated for several months.  She worked in construction as did he, first at West Coast Roofing and Solar in Berkeley, and briefly at a construction company called F.F.W. in San Jose.  Every week he sent several hundred dollars—as much as he could afford—to support his children and their mothers.  Later, when Ms. Lopez moved to the East Coast, Mr. Teruel shared an apartment in Oakland with three friends.  In the fall, he ran out of work and struggled to cover his expenses and child support payments, which drove him to commit the instant offense.  Mr. Teruel has never personally used drugs and deeply regrets his conduct, as he realizes the harm narcotics do to the community, and the severe penalties that he will now suffer as a result of his poor decisions.

### IV.     LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker,* 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a).  The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence.  Importantly, the Court may not presume the Guidelines range is reasonable.  *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam).  Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants.  18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).  In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

### IV.   ARGUMENT

Several matters warrant the Court's consideration in connection with Mr. Teruel's request for a time served sentence and the § 3553(a) factors:

*First*, the charged offense and Mr. Teruel's current circumstances counsel in favor of a time served sentence of three months.  This case should never have been prosecuted federally.  The offense was a very small street-level drug sale that did not involve violence, weapons, possession of large quantities of controlled substances, or other aggravating factors.  Mr. Teruel has no prior criminal history.  He is not a serious offender or a threat to our community.  Rather, he is a refugee from poverty and gang violence in Honduras who sought economic opportunities in the United States.  Federal prosecutions such as this one inappropriately single out impoverished immigrants in our community where the gravity of the crime simply does not warrant the use of federal resources, let alone a multi-month sentence.  Given the circumstances of the offense, additional custodial time is certainly not necessary to mete out sufficient punishment, consistent with the mandate of § 3553(a).

*Second*, deterrence does not justify a longer sentence.  As an initial matter, the available data does not support the conclusion that longer sentences promote general deterrence.[2]  Given the particular the circumstances of this case, the concept of specific deterrence does not make much sense either.  More fundamentally, Mr. Teruel, like many immigrants, faces far worse conditions in Honduras.  The violence and hardships at home drove him to take the extraordinary and unwelcome steps of fleeing his family and his country, and ultimately to commit the instant crime.  Mr. Teruel took these steps in order to survive.  The deterrent value of a marginally longer sentence, weighed against the desperation felt by immigrants such as Mr. Teruel, is doubtful at best. The ordeal of his

---

[2] *See, e.g.,* Kelli D. Tomlinson, *An Examination of Deterrence Theory: Where Do We Stand?* FEDERAL PROBATION 80 (3), 33-38 (Dec. 2016) ("Severity of punishment was once thought to deliver the main deterrent effect; the more severe the consequence for law-breaking, the less likely an individual is to commit a crime. However, this assumption has not been supported in the literature.").

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*TERUEL*, CR 19–00580 VC

4

incarceration and near-certain deportation thereafter is more than sufficient to deter him from reoffending or returning to this country.

*Third*, public safety certainly does not mandate a longer sentence. Mr. Teruel has never been previously arrested, he is not violent, he is not a leader or organizer, and he does not belong to a gang. Although the government has attempted in many of these cases to justify its misguided campaign of low-level drug prosecutions in the Tenderloin by citing statistics concerning substance abuse and deaths in the area, there is no evidence that prosecuting the lowest level offenders will have any impact on public health and safety. Moreover, its decision to arrest Mr. Teruel as he attempted to appear for his state court hearing undermines state judicial proceedings and public safety.

*Fourth*, and finally, Mr. Teruel personal history strongly counsels in favor of a downward variance. Mr. Maradiaga is hard-working, family-loving, and remorseful. If he had had the good fortune to been born in the United States, he would be a well-off and productive member of society. It is also notable that Mr. Teruel has maintained strong family ties and financially supports his children, despite his own poverty. Thus, while the instant offense is reprehensible, it is also understandable why Mr. Teruel committed the crime out of desperation. Mr. Teruel's personal circumstances do not favor imposition of a longer sentence.

## V.   CONCLUSION

For all the reasons set forth above, Mr. Teruel respectfully asks that the Court sentence him to time served followed by three years supervised release.

|  |  |
|---|---|
| Dated:   April 6, 2020 | Respectfully submitted,<br><br>STEVEN G. KALAR<br>Federal Public Defender<br>Northern District of California<br><br>              /S<br>DAVID RIZK<br>Assistant Federal Public Defender |